**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEON LAWRENCE,**

                                                   **Plaintiff,**

        **vs.**                                                            **1:20-CV-00694**
                                                                           **(MAD/DJS)**
**DERRICK SHERMAN, ERIC CLIFFORD,**
**and MAYOR GARY MCCARTHY, City of**
**Schenectady**,

                                                   **Defendants.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**DEON LAWRENCE**
20-A-1153
Mid-State Correctional Facility
P.O. Box 2500
Marcy, New York 13403
Plaintiff, *Pro Se*

**JOHNSON LAWS, LLC**                    **COREY A RUGGIERO, ESQ.**
646 Plank Road, Suite 205               **GREGG TYLER JOHNSON, ESQ.**
Clifton Park, New York 12065            **HANNAH HYDE HAGE, ESQ.**
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        *Pro se* Plaintiff Deon Lawrence commenced this civil rights action on June 22, 2020,

alleging violations of his constitutional rights in connection with an April 2018 arrest in

Schenectady, New York.  *See* Dkt. No. 1.  On July 28, 2020, Magistrate Judge Stewart issued a

Report-Recommendation and Order recommending that the complaint be dismissed with

prejudice as to certain claims and without prejudice as to others.  *See* Dkt. No. 7.  This Court

adopted the Report-Recommendation and Order on October 6, 2020, dismissed the complaint, and granted Plaintiff partial leave to amend. *See* Dkt. No. 13. On November 6, 2020, Plaintiff filed a proposed amended complaint asserting a claim of false arrest against Defendant Derrick Sherman, and a municipal liability claim against Defendants Eric Clifford and Gary McCarthy (as Mayor of the City of Schenectady). *See* Dkt. No. 16. This Court accepted the amended complaint for filing on December 11, 2020. *See* Dkt. No. 20.

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 51. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND[1]

Plaintiff is a Level 2 sex offender registered with the State of New York. *See* Dkt. No. 62-2 at 2. As a registered sex offender, Plaintiff is required to notify the New York State Division of Criminal Justice Services ("DCJS") of any change in address "no later than ten (10) days after" moving. Dkt. No. 51-5 at 11; *see also* N.Y. Correct. Law § 168-f(4). On April 19, 2018, the Schenectady County Sheriff's Office (the "Sheriff's Office") notified Defendant Sherman—a detective with the Schenectady Police Department (the "SPD")—that Sheriff's Office deputies could not locate Plaintiff at his last registered address, the Schenectady City Mission (the "City Mission"). *See* Dkt. No. 62-2 at 2.

Defendant Sherman then visited the City Mission and a supervisor there provided him an affidavit stating that Plaintiff "last resided at the [City Mission] on April 8, 2018." *See id.*; *see also* Dkt. No. 51-7 at 2. On April 21, 2018, Plaintiff was arrested by Sheriff's Office deputies and

---

[1] The facts set forth below are taken from Defendants' reconciled statement of material facts. *See* Dkt. No. 62-2. Although Plaintiff denies several of the statements made therein, *see* Dkt. No. 58-1 at 1-2; Dkt. No. 62-2 at 5, his broad objections fail to specifically controvert those statements, and so the Court deems them admitted. *See* N.D.N.Y. L.R. 56.1(b).

held in the custody of the Sheriff's Office at the Schenectady County Jail on unrelated charges. *See* Dkt. No. 62-2 at 2. Meanwhile, Defendant Sherman contacted the DCJS Sex Offender Registry requesting a review of Plaintiff's file, and received an affidavit from DCJS stating that Plaintiff had not submitted a change of address form since January 29, 2018. *See id.* at 3; *see also* Dkt. No. 51-7 at 3-6.

On April 27, 2018, Sheriff's Office deputies transported Plaintiff to Schenectady City Court for his court appearance on the unrelated charges. *See* Dkt. No. 62-2 at 3. That same day, Defendant Sherman completed a felony complaint against Plaintiff for the violation of New York Correction Law § 168-f(4). *See* Dkt. No. 51-8. The felony complaint stated that Plaintiff "last stayed at ... [the] City Mission ... on April 8, 2018." *Id.* at 2. When Plaintiff finished his Schenectady City Court appearance, Plaintiff was brought by Sheriff's Office deputies to SPD, where he was arrested and booked by SPD officers, before being returned to the Schenectady County Jail. *See* Dkt. No. 62-2 at 3. On May 22, 2018, Plaintiff was indicted by a Grand Jury on the charge of violating Correction Law § 168-f(4). *See id.* Unlike the City Mission supervisor's affidavit and the felony complaint, the indictment stated that Plaintiff "last resided at [the City Mission] on February [25, 2018]." Dkt. No. 58 at 7. It appears that the City Mission supervisor also gave February 25, 2018 as the date of Plaintiff's last residence at the City Mission during his grand jury testimony. *See id.* at 8.

On December 20, 2018, a pretrial hearing for the Section 168-f(4) charge was held. *See id.* at 5-14. At the hearing, the People recommended that the indictment be dismissed in the furtherance of justice because the conflict between the dates in the City Mission supervisor's affidavit, the City Mission supervisor's grand jury testimony, and the indictment would create a "major issue at trial." *Id.* at 7, 11. The People suggested that they believed that the inconsistent

3

dates were the result of a failure of "careful[ ] read[ing]," rather than "intentionally false statements." *Id.* at 11.  Ultimately, for the reasons raised by the People,[2] the Schenectady County Court dismissed the indictment and released Plaintiff from the custody of the Schenectady County Jail.  *See id.* at 12.

Defendants now argue that Plaintiff's false arrest claim is precluded as a matter of law because (1) Plaintiff's admission that he was already in custody at the time he was arrested means that there was no liberty deprivation; (2) the arrest was supported by probable cause; and (3) Defendant Sherman is entitled to qualified immunity.  *See* Dkt. No. 51-11 at 10-17.  Defendants also argue that Plaintiff's municipal liability claims must fail because the amended complaint "is devoid of factual allegations describing or even identifying any specific policy, practice, or custom of the [SPD] which caused the alleged violation of any of Plaintiffs constitutional rights." *Id.* at 17.  Plaintiff opposes the motion.  *See* Dkt. No. 58.

### III. DISCUSSION

#### A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a

---

[2] The court also found that the supervisor's sworn statement was "obviously *Brady* material" and "should have been turned over."  Dkt. No. 58 at 12.  The court was unsure about the proper remedy for a *Brady* violation, but noted that the indictment was being dismissed in the furtherance of justice regardless.  *See id.*

motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'"  *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id.* (quoting *Anderson*, 477 U.S. at 252).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Id.* (quotations omitted).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The Second Circuit

has directed that the court is obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "This liberal standard, however, does not excuse a pro se litigant from following the procedural formalities of summary judgment." *Id.* (citation omitted). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.    False Arrest**

A false arrest claim under Section 1983, premised on an individual's right under the Fourth Amendment to be free from unreasonable seizures, "'is substantially the same as a claim for false arrest under New York law.'" *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "To prevail on a claim of false arrest under New York law, the plaintiff must show that: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)). "The law is clear that '[a] plaintiff does not have a claim for false arrest ... under [§] 1983 if, at the time of his arrest ... , he is already in custody or incarcerated on other charges, because there is no deprivation of liberty interests.'" *Ozzborn v. Cornell*, No. 9:17-CV-1039, 2021 WL 2227829, *5 n.1 (N.D.N.Y. June 2, 2021) (quoting *Wong v. LaPierre*, No. 8:07-CV-1110, 2011 WL 13248503, *8 (N.D.N.Y. Mar. 23, 2011)); *see also Walker v. Sankhi*, 494 Fed. Appx. 140, 143 (2d Cir. 2012); *Pena v. Aldi*, No. 3:19-CV-124, 2019 WL 2193465, *9 (D. Conn. May 21, 2019); *Nardoni*

6

*v. City of New York*, 331 F. Supp. 3d 116, 123 (S.D.N.Y. 2018); *Bristol v. Queens County*, No. CV 09-5544, 2018 WL 5077166, *13 (E.D.N.Y. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4328828 (E.D.N.Y. Sept. 11, 2018); *Goncalves v. Reynolds*, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001).

Plaintiff acknowledges that he was already "in custody at the time" SPD arrested him. Dkt. No. 58 at 2; *see also* Dkt. No. 51-3 at 3, 5.  However, Plaintiff argues that the prior arrest "was for minor misdemeanor offenses" for which he would have "more than likely been released" if he had not been rearrested by SPD.  Dkt. No. 58 at 2.  Even assuming that a false arrest claim can be established by showing that a period of incarceration was prolonged by new charges, *see, e.g., Bristol*, 2018 WL 5077166, at *13, there is no evidence in the record to support a claim that Plaintiff's incarceration was prolonged by SPD's Section 168-f(4) charge.  Indeed, it is not even clear from the record (1) what the prior misdemeanor charges were for; (2) what occurred at the April 27, 2018 court appearance; or (3) when and how the prior misdemeanor charges were resolved.  Thus, Plaintiff's unsupported assertion that he "would have more than likely been released" if he had not been arrested for the Section 168-f(4) charge, Dkt. No. 58 at 2, "is not sufficient to overcome a motion for summary judgment."  *Lee*, 902 F. Supp. at 429.

However, even if Plaintiff had established a deprivation of liberty interests, Plaintiff's false arrest claim would still fail as a matter of law.  "An arrest of a criminal suspect by a law enforcement officer with probable cause is a 'privileged' confinement even if it is non-consensual."  *McKay v. City of New York*, 32 F. Supp. 3d 499, 505 (S.D.N.Y. 2014) (quotation omitted).  Thus, "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'"  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013)

(quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "The burden of establishing the

absence of probable cause rests on the plaintiff."  *Nelson v. Hernandez*, 524 F. Supp. 2d 212, 220

(E.D.N.Y. 2007) (citation omitted).

     "'In general, probable cause to arrest exists when the officers have knowledge or

reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime.'"  *Gonzalez*, 728 F.3d at 155 (quoting *Weyant*, 101 F.3d at 852) (emphasis

omitted).  "The inquiry is limited to 'whether the facts known by the arresting officer at the time

of the arrest objectively provided probable cause to arrest.'"  *Id.* (quoting *Jaegly v. Couch*, 439

F.3d 149, 153 (2d Cir. 2006)).  "Where the plaintiff was arrested pursuant to a warrant issued by a

neutral magistrate ... we presume that probable cause existed."  *Rhodes v. United States*, 519 Fed.

Appx. 703, 705 (2d Cir. 2013) (citing *Walczyk v. Rio*, 496 F.3d 139, 155-56 (2d Cir. 2007)).  A

plaintiff "may rebut this presumption only by showing that 'the officer submitting the probable

cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false

statement in his affidavit or omitted material information, and that such false or omitted

information was necessary to the finding of probable cause.'"  *Id.* (quoting *Soares v. Connecticut*,

8 F.3d 917, 920 (2d Cir. 1993)) (internal quotation marks omitted).

     Plaintiff has failed to submit any evidence that rebuts the presumption that probable cause

existed for his arrest.  Plaintiff alleges that the arrest warrant was "obtained illegally" because the

felony complaint prepared by Defendant Sherman was "perjured" and "fabricated."  Dkt. No. 16

at 1.  Plaintiff appears to base this argument on his view that the judge at the December 20, 2018

hearing "clearly place[d] the blame on [Defendant] [S]herman by him not paying attention to the

details of the affidavit [when it] was signed by [the City Mission supervisor]."  Dkt. No. 58 at 1.

Initially, it was the People—not the judge—who theorized that the inconsistency between the dates might be the result of Defendant Sherman's failure to "carefully read" the affidavit.  Dkt. No. 58 at 11.  However, there is no actual evidence in the record that indicates that the April 8, 2018 date provided in the affidavit and subsequent felony complaint came from Defendant Sherman as opposed to, say, the City Mission supervisor from whom the affidavit originated.[3]

However, even assuming that Defendant Sherman was the source of the erroneous date, that information alone does not amount to evidence that Defendant Sherman made a false statement "knowingly and intentionally" or "with reckless disregard for the truth."  *Rhodes*, 519 Fed. Appx. at 705.  First, it is difficult to imagine why Defendant Sherman would knowingly or intentionally provide a false date in the affidavit and felony complaint when the allegedly correct date established a *more* extensive violation of Correction Law § 168-f(4).[4]  Second, there is no evidence suggesting Defendant Sherman acted with a reckless disregard for the truth in the lead up to Plaintiff's arrest.  Rather, the evidence in the record suggests that Defendant Sherman acted reasonably in response to the information provided to him by the Sheriff's Office, the City Mission supervisor, and DCJS, and then prepared a felony complaint that was wholly consistent with that information.  It is not enough that an error was subsequently discovered in the City Mission supervisor's affidavit, or that Defendant Sherman failed to catch it, because "'misstatements or omissions caused by negligence or innocent mistake[s]' do not rise to the level or knowingly false statements or statements made with reckless disregard for the truth."  *Mayes v.*

---

[3] It appears that Plaintiff did not timely request or conduct any depositions in this matter. A letter requesting "interrogatories" and "admissions" from Defendants is on the docket, Dkt. No. 41, but no response or opposition to this letter appears to have been provided to the Court.

[4] In fact, as Defendants note, the discrepancy the dates was to Plaintiff's clear benefit—it resulted in the dismissal of a case that would have otherwise proceeded against him.

*City of New Haven*, No. 3:18-CV-429, 2019 WL 1332219, *5 (D. Conn. Mar. 25, 2019) (quoting

*United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013)).

Accordingly, Defendants' motion for summary judgment on Plaintiff's false arrest claim is

granted.[5]

## C.    Municipal Liability

It is well established that where a plaintiff fails to establish "any underlying constitutional

violation, he cannot maintain a *Monell* claim." *Malik v. City of New York*, 841 Fed. Appx. 281,

285 (2d Cir. 2021) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).  Because

Plaintiff is unable to establish the underlying false arrest claim against Defendant Sherman, his

municipal liability claims against Defendants Clifford and McCarthy necessarily fail as well.

Even if Plaintiff's false arrest claim had survived, however, the Court would still grant

Defendants' motion for summary judgment on Plaintiff's municipal liability claims.  Plaintiff has

not proffered *any* evidence that his alleged constitutional deprivations were "caused by a

governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691

F.3d 72, 80 (2d Cir. 2012); *see also Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)

("'[T]he mere assertion ... that a municipality has such a custom or policy is insufficient [to

withstand dismissal] in the absence of allegations of fact tending to support, at least

circumstantially, such an inference'") (quotation omitted).  To the extent that Plaintiff asserts

these claims against Defendants Clifford and McCarthy in their individual capacities, Plaintiff has

failed to identify any factual support for his assertion that they were personally involved in his

arrest. *See Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (holding that, "'[b]ecause

vicarious liability is inapplicable to ... [Section] 1983 suits, a plaintiff must plead that each

---

[5] In light of the above holding, it is unnecessary to reach the issue of qualified immunity.

Government-official defendant, through the official's own individual actions, has violated the Constitution'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Accordingly, Defendants' motion for summary judgment on Plaintiff's municipal liability claims is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 51) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  July 18, 2022
      Albany, New York

Mae A. D'Agostino
U.S. District Judge